Anthony M. Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Theresa Trillo (Bar No. 349989)
Email: tt@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
8 Rio Vista Ave.
Oakland, CA 94611
Phone: (917) 371-8293

Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

*Attorneys for Plaintiff*
*LOS ANGELES WATERKEEPER*

S. Wayne Rosenbaum (SBN 182456)
Grant R. Olsson (SBN: 317583)
ENVIRONMENTAL LAW GROUP LLP
225 Broadway, Suite 1900
San Diego, California 92101
Tel: (619) 231-5858
swr@envirolawyer.com
golsson@envirolawyer.com

*Attorneys for Defendant*
*FORREST MACHINING LLC*

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>  Plaintiff,<br><br>    v.<br><br>FORREST MACHINING LLC, a California Limited Liability Company,<br><br>  Defendant. | Case No.: 2:25-cv-02828<br><br>**[PROPOSED] CONSENT DECREE** |

### CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Forrest Machining LLC ("Forrest" or "Defendant") operates a facility at 27756 Avenue Mentry Valencia, CA 91335, under Waste Discharger Identification number 4 19I02736 ("Facility") commencing on or about October 30, 2023, the date of Defendant's Notice of Intent to Comply with the General Permit ("NOI");[1]

**WHEREAS,** Forrest is an establishment primarily engaged in manufacturing aircraft parts and auxiliary equipment, not elsewhere classified under Standard Industrial Classification ("SIC") Code 3728;

**WHEREAS,** storm water discharges associated with "Industrial Activity" (as defined below) at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[2], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et*

---

[1] The Facility was previously operated by another entity which underwent a conversion to Forest Machining LLC prior to Defendant's submission of the NOI.

[2] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General

1  *seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, <u>33 U.S.C. §§ 1311(a)</u>,

2  <u>1342</u>;

3      **WHEREAS,** the "Industrial Activities" (as defined below) occurring at the

4  Facility are depicted on the Site Map attached hereto as Exhibit A, which LA

5  Waterkeeper has reviewed and approved;

6      **WHEREAS**, Plaintiff alleges that Forrest's operations at the Facility result in

7  discharges of pollutants into waters of the United States and are regulated by the

8  Clean Water Act Sections 301(a) and 402. <u>33 U.S.C. §§ 1311(a)</u>, <u>1342</u>;

9      **WHEREAS**, the General Permit requires all permittees, including Forrest, to

10 comply with, *inter alia*, the following mandates: (1) develop and implement a storm

11 water pollution prevention plan and a storm water monitoring implementation plan,

12 (2) control pollutant discharges using, as applicable, best available technology

13 economically achievable or best conventional pollutant control technology to prevent

14 or reduce pollutants through the development and application of Best Management

15 Practices, which must be included and timely updated in the SWPPP, (3) reduce and

16 eliminate discharges necessary to comply with any and all applicable Water Quality

17 Standards, and (4) implement a monitoring and reporting program designed to assess

18 compliance with the Permit;

19     **WHEREAS**, on October 31, 2024, Plaintiff issued a notice of intent to file suit

20 ("60-Day Notice") to Forrest, its registered agent, the Administrator of the United

21 States Environmental Protection Agency ("EPA"), the Executive Director of the State

22 Water Resources Control Board ("State Board"), the Executive Director Los Angeles

23 Regional Water Quality Control Board ("Regional Board" or "RWQCB"), and the

24 Regional Administrator of EPA Region IX, alleging violations of the Clean Water

25 Act and the General Permit;

26

27 ───────────────

28 Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be
to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as
§XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

[~~PROPOSED~~] CONSENT DECREE

**WHEREAS**, on April 1, 2025, LA Waterkeeper filed a complaint against Forrest in the Central District of California, Civil Case No. 2:25-cv-02828 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Forrest's discharges of pollutants into storm drains and surface waters, including the Santa Clara River ("Receiving Water");

**WHEREAS**, Forrest denies all the violations set forth in LA Waterkeeper's complaint;

**WHEREAS,** on February 25, 2025, and February 26, 2025, FMI (along with Dynamic Aerostructures LLC and Dynamic Aerostructures Intermediate LLC) filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The bankruptcy case is pending joint administration under Case No. 25-10292 before the Honorable Laurie Selber Silverstein in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Further details can be found at the following link Dynamic Aerostructures LLC, et al. (FMI Aerostructures) ("Bankruptcy Petition");

**WHEREAS, t**he Debtors in these chapter 11 cases: Dynamic Aerostructures LLC (3076); Dynamic Aerostructures Intermediate LLC (9800); and Forrest Machining LLC (3421);

**WHEREAS**, LA Waterkeeper and Forrest (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, since receiving the 60-Day Notice, Forrest has spent and anticipates further spending up to $500,000 to improve stormwater management at the Facility and implement this Consent Decree;

**WHEREAS**, all actions taken by the Settling Parties pursuant to this Consent Decree shall be made in compliance with all applicable federal, state, and local laws, rules, and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, <u>33 U.S.C. § 1365(a)(1)(A)</u>.

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, <u>33 U.S.C. § 1365(c)(1)</u>, because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Forrest pursuant to Section 505 of the CWA, <u>33 U.S.C. § 1365</u>.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, for as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

**I.      OBJECTIVES**

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act ("CWA"), and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint as it pertains to Forrest. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     Considering these objectives and as set forth fully below, the Parties agree to comply with the provisions of this Consent Decree, and terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.     AGENCY REVIEW AND CONSENT DECREE TERM

### A.     AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. LA Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). If the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, to coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.     DEFINITIONS

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the General Permit have the meaning assigned to them in Attachment C of the General Permit. Whenever the terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.     "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

b.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c.    "Day" means a calendar day. In computing any period under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.    "Design Storm" means the volume and flow rate of runoff produced from an 85th percentile, 24-hour storm event as defined in General Permit Section X.H.6.

e.    "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP site map for the Facility.

f.    "Effective Date" means the day this Consent Decree is approved and entered by the Court.

g.    "Entry Date" shall have the same meaning as the Effective Date.

h.    "Forecasted Rain Event" means a rain event with a probability of fifty percent (50%) or greater to cumulatively result in one tenth (0.1) inches of rain within the next twenty-four (24) hours as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "91355, Valencia, CA, USA."[3]

i.    "Industrial Activity" means activities directly related to manufacturing, processing, or raw materials storage areas at the facility as identified in Attachment A of the Permit.

j.    "PPT" means Pollution Prevention Team as described in General Permit Section X.D.1.

---

[3] Available at https://forecast.weather.gov/MapClick.php?lat=34.4167&lon=-118.5707

[PROPOSED] CONSENT DECREE

k.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

l.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

m.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

n.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System[4].

o.    "Storm Resistant Shelter" shall have the definition set forth in Section XVII.B.5 of the General Permit.

p.    "SWPPP" means a Storm Water Pollution Prevention Plan as defined in Section X of the General Permit.

q.    "Term" means the period between the Effective Date and the "Termination Date."

r.    "Termination Date" means the date that all accrued monetary obligations in this Consent Decree, as approved by the bankruptcy court, have been met and one of the following events has occurred:

i.    June 30, 2027, if no proceeding or process to enforce this Consent Decree was initiated prior to June 30, 2026, or seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30, 2027; or

---

[4] Available at https://smarts.waterboards.ca.gov/smarts/faces/SwSmartsLogin.xhtml.

ii.  Forrest satisfies the requirements of a Non-Exposure
Certification pursuant to Section XVII of the General
Permit or a Notice of Non-Applicability pursuant to Section
XX.C of the General Permit for all the Facility, or all
portions of the Facility where Regulated Industrial
Activities occur, and Forrest provides written notification to
LA Waterkeeper of the Regional Board's approval.

s.  "Wet Season" means the seven-month period beginning October
1st of any given calendar year and ending June 30th of the
following calendar year.

## III.  COMMITMENTS OF THE SETTLING PARTIES

### A.  STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.  <u>Non-Storm Water Discharge Prohibition</u>. Forrest shall fully comply with General Permit Section IV.

13.  <u>Current and Additional Best Management Practices</u>. In addition to maintaining the current BMPs described in the Facility's SWPPP attached hereto as Exhibit B, Forrest shall develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit. At all times, Forrest shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations.

14.  <u>Rain Gauge/Sensor</u>. Forrest shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Forrest shall collect data using the gauge/sensor for all precipitation

events to the nearest 0.1 inch, including start/stop times. Data from the rain
gauge/sensor shall be conclusive of precipitation quantities and timing for purposes
of this Consent Decree provided, however, that the Parties agree that the rain gauge
data shall not be conclusive of whether a discharge of storm water associated with
industrial activities occurred or when such discharge commenced for the purposes of
determining Forrest compliance with its obligations under the General Permit or this
Consent Decree. If Forrest fails to collect and analyze samples from four QSEs
during a Reporting Year, Forrest shall make these records available for LA
Waterkeeper's review via email within ten (10) business days of the request for said
documents by LA Waterkeeper, provided that LA Waterkeeper shall request said
documents no more than once during each calendar year of this Consent Decree. Rain
gauge data and all communications between the Settling Parties related thereto,
described herein, shall be deemed confidential. Forrest shall not be required to upload
the rain gauge data to SMARTS. LA Waterkeeper shall not use the rain gauge data
for any purpose other than as a confidential and informational communication, or a
necessary as evidence in any dispute resolution proceeding.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. Within thirty (30)
days of the Effective Date, or as otherwise set forth below, Forrest shall confirm that
the following BMPs have been implemented at the Facility as further described in the
SWPPP attached hereto:

      a. Install rain gutters to prevent comingling of roof runoff with storm
water that comes in contact with industrial activities as shown on
Exhibit A prior to September 30, 2026;

      b. Construct a blind trench at the entrance gate and install biochar or
equivalent waddles in the trench to treat storm water that comes in
contact with industrial activities as shown on Exhibit A prior to
September 30, 2026;

    c.    Implement a sweeping program as detailed in its SWPPP pursuant to provision X.H.1.a. of the General Permit, which shall extend to all paved areas of Facility which are exposed to storm water associated with industrial activities as shown on the Exhibit A;

    d.    During each Wet Season, as necessary, replace the wattles when degraded or ineffective, including when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles are not sufficiently reducing pollutant concentrations;

    e.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles deployed at the Facility;

    f.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

    g.    Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, bins, containers, vehicles, equipment, and waste scrap materials from the entire property;

    h.    Institute an equipment and vehicle maintenance program that ensures:

        i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

        ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

[PROPOSED] CONSENT DECREE

iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

i.    During the Wet Season, maintain BMPs detailed in its SWPPP pursuant to provision X.H.1.b. of the General Permit;

j.    In addition, to rain event and monthly inspections described in Paragraphs 24 and 25 below, PPT personnel will conduct an annual Pre-Rain Inspection at the beginning of the reporting year. The inspection will include the following elements:

    i.    Inspection of the site for any areas of dirt and debris accumulation.

    ii.    Removal of dirt and debris from targeted areas.

    iii.    Inspect for any spills or leaks and cleanup immediately as necessary.

    iv.    Confirm all waste/trash/recycle bins are closed or covered.

k.  Within seven (7) days of each of the above BMPs being implemented, Forrest shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITY**

16.    Develop a monitoring program consistent with the General Permit Section XI. During the Term, Forrest shall collect samples of storm water discharge from each Discharge Point at the Facilities from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Event during the first half of the Reporting Year and the first two (2) Qualifying Storm Event during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Forrest would have been required to collect samples during a rain event pursuant to this Consent Decree

[PROPOSED] CONSENT DECREE

had such rain event produced a discharge, but Forrest did not collect samples because such rain event did not produce a discharge, then Forrest shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Forrest shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

17.    Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Forrest conduct sampling for any additional parameters or cease sampling for any of the parameters listed in Table 1 that are listed in 40 C.F.R. § 131.38 and/or in the General Permit at the sampling locations described in Forrest's then-current SWPPP pursuant to Section XI.B of the General Permit that would otherwise be reportable on SMARTS for any reason, including as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the Action Plan requirements below, and the Settling Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

18.    Laboratory and Holding Time. Except for pH samples, Forrest shall deliver all samples to a California state-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136 and Section XI.B.10 of the General Permit. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.    Detection Limit. Forrest shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    Reporting. Forrest shall upload and certify on SMARTS the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the

laboratory report, for all samples collected at the Facility pursuant to Paragraph 16 above within ten (10) days of receiving the laboratory results, and shall notify LA Waterkeeper that the foregoing has been uploaded to SMARTS and certified within five (5) days of certification.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>. Forrest shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1[5]**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L (annual average); 400 mg/L (instantaneous) | General Permit NAL |
| Total Zinc | 0.26 mg/L (annual average) | General Permit NAL |
| Total Iron | 1.0 mg/L (annual average) | General Permit NAL |
| NO3+NO2 | 0.68 mg/L (annual average) | General Permit NAL |
| Total Aluminum | 0.75 mg/L (annual average) | General Permit NAL |
| Oil and Grease | 15 mg/L (annual); 25 mg/L (instantaneous) | General Permit NAL |
| pH | 6.0-9.0 s.u. (instantaneous) | General Permit NAL |

22.    <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from the Facilities within a Reporting Year exceeds the applicable annual value in Table 1; or where the concentration of any pollutant in any one (1)

---

[5] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit for such parameter shall be the then-effective limit provided by the applicable source, e.g., if the annual NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new annual NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein.

15

storm water sample from one of the four Facilities exceeds the applicable instantaneous value in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

23. <u>Action Plan</u>.[6] As of September 30, 2026, and for the remainder of the Term, if (a) Forrest has an unauthorized non-storm water discharge, or (b) Forrest receives a laboratory report for storm water samples that demonstrates an Exceedance as defined above; or (c) after an advanced treatment system is fully installed, operational, and optimized, if ever, the advanced treatment system discharges untreated storm water in smaller than a Design Storm (each, a "Trigger Event"), Forrest shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.

23.1. <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge and/or the applicable discharge in smaller than a Design Storm; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge and/or the applicable discharge in smaller than a Design Storm; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition and/or the applicable discharge in smaller than a Design Storm, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time

---

[6] The Action Plan discussed in this Consent Decree is a separate and distinct requirement from any "Action Plan" or Exceedance Response Actions discussed in the General Permit, though actions taken to comply with the Action Plan may be used by Forrest to demonstrate compliance with the General Permit.

[PROPOSED] CONSENT DECREE

schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Forrest shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

a.    BMP Implementation. The Action Plan's time schedule(s) for implementation of any BMPs shall ensure that Forrest implements all BMPs identified in the ARS as soon as possible, but in no event later than ninety (90) days following the Action Plan becoming "final" pursuant to Paragraph 23.d. below, unless a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the ARS being implemented, Forrest shall confirm to LA Waterkeeper in writing, with photographs where applicable as determined by Forrest, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should be evaluated for inclusion, but are not required to be included, in Action Plans based on an Exceedance to attain the Table 1 levels in the Facility's storm water discharges:

i.    Hydrologic Controls. Installation of additional berms, roof drains, or equivalent structural controls necessary to reduce or prevent storm water associated with Industrial Activities from flowing off site other than through the engineered

storm water conveyance system or storm water retention or treatment facilities.

    ii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.    <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.    <u>Evaluation of Existing BMPs</u>. Replacing, rehabilitating, or eliminating existing BMPs, considering the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Forrest's complete Action Plan to provide Forrest with comments, on the form attached hereto as Exhibit C. LA Waterkeeper not providing written comments within thirty (30) days shall constitute irrefutable evidence that LA Waterkeeper is satisfied with the content and conclusions set forth in the Action Plan. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, if any, Forrest shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing, on the form attached hereto as Exhibit C, why any comment is not incorporated. Forrest's decision not to adopt any of LA Waterkeeper's suggestions regarding an Action Plan shall not impact on the otherwise applicable schedule for

implementing any other revision to the SWPPP or MIP set forth in the Action Plan. The Action Plan shall be considered "final" upon Forrest's submission of its response, or thirty (30) days after LA Waterkeeper's receipt of Forrest's complete Action Plan if LA Waterkeeper does not provide written comments by such time. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact on the schedule for implementing any other BMP set forth in the Action Plan.

d.    Forrest shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 29.a below.

e.    <u>Action Plan Payments</u>. Forrest shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper concurrently with the Action Plan. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

f.    <u>Action Plan Confidentiality</u>. The Action Plan, and all communications between the Settling Parties related thereto, described in Paragraph 23 herein, shall be deemed confidential. Forrest shall not be required to upload the Action Plan to SMARTS. LA Waterkeeper shall not use the Action Plan for any

purpose other than as a confidential and informational communication, or as necessary as evidence in any dispute resolution proceeding.

**D.    VISUAL OBSERVATIONS**

24.    <u>Storm Water Discharge Observations</u>. During the Term, Forrest's PPT members shall conduct visual observations during the Facility's operating hours during every rain event in compliance with all requirements of Section XI.A.2 of the General Permit.

25.    <u>Monthly Visual Observations</u>. During the Term, Forrest's PPT members shall conduct monthly visual observations of the Facility pursuant to General Permit § XI.A and as further described in its SWPPP.

26.    <u>Visual Observations Records</u>. Forrest shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25. In the event that Forrest is required to prepare an Action Plan, Forrest shall make these records available for LA Waterkeeper's review via email within ten (10) business days of the request for said documents by LA Waterkeeper, provided that LA Waterkeeper shall request said documents no more than once during each calendar year of this Consent Decree.

27.    <u>Employee Training Program</u>. Forrest shall continue to implement a training program for PPT personnel as described in its SWPPP that incorporates the requirements set forth in the General Permit at I.I.63, IX.A, X.H.1.f, X.H.1.g.iii, and the fact sheet at I.D.4, and II.I.2.i.;

       a.    <u>Sampling Training</u>. Forrest shall designate an adequate number of PPT members sufficient to collect storm water samples as described in its SWPPP and as required by General Permit section XI.B.;

       b.    <u>Visual Observation Training</u>. Forrest shall provide training to all PPT members on how and when to properly conduct visual

observations as described in its SWPPP and pursuant to General Permit section XI.A.;

    c.    <u>Non-Storm Water Discharge Training</u>. Forrest shall train all PPT members regarding Non-Storm Water Discharges as described in its SWPPP and pursuant to Section III and IV of the General Permit;

    d.    <u>Employees</u>. All PPT members at the Facility shall participate in an annual Training Program. New PPT members who join the PPT during the wet season shall participate in a Training Program within thirty (30) business days of their becoming a member of the PPT as described in its SWPPP pursuant to section X.H.1.f. of the General Permit;

    e.    <u>Records</u>. Forrest shall maintain training records pursuant to General Permit section X.H.1.g.iii and if Forrest is required to prepare an Action Plan, shall provide LA Waterkeeper with a redacted copy of these records[7] within ten (10) days of receipt of a written request, provided that LA Waterkeeper shall request such records no more than once during each calendar year of this Consent Decree.

28.    <u>Initial SWPPP Revisions</u>. Forrest and LA Waterkeeper have met and conferred about Forrest's SWPPP and Forrest agrees to upload and certify to SMARTS the revised SWPPP attached hereto as Exhibit B, which the Settling Parties agree fully complies with the requirements of the General Permit and this Consent Decree.

29.    <u>Additional SWPPP Revisions</u>.

---

[7] Pursuant to Forrest personnel policies and provision II.A.3. of the General Permit Fact Sheet information regarding individual employee names are deemed to be confidential.

a.  Within thirty (30) days after any Action Plan has become final pursuant to Paragraph 23.d above (or resolution pursuant to Dispute Resolution), Forrest shall revise the then-current SWPPP to reflect the changes required by the Action Plan and shall upload and certify on SMARTS the revised SWPPP. Forrest shall notify LA Waterkeeper that the foregoing has been uploaded to SMARTS and certified within five (5) days of certification.

b.  Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, changes in or additions of industrial activities that impact storm water discharge, or changes and documentation required in connection with the On-Site Compliance Option as specified in the General Permit, Attachment I § II.H.3), Forrest shall revise the then-current SWPPP to reflect such changes and shall upload and certify on SMARTS the revised SWPPP.  Forrest shall notify LA Waterkeeper that the foregoing has been uploaded to SMARTS and certified within ten (10) days of certification.

c.  Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 29.a and 29.b, LA Waterkeeper shall have thirty (30) days upon notification that a SWPPP revision has been uploaded to SMARTS to provide Forrest with comments. LA Waterkeeper not providing written comments to the SWPPP within thirty (30) days shall constitute irrefutable evidence that LA Waterkeeper accepts all revisions to the SWPPP. Within thirty (30) days of receiving LA Waterkeeper's comments to the SWPPP, if any,

[PROPOSED] CONSENT DECREE

Forrest shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Forrest shall upload the revised SWPPP to SMARTS.

    d.    The revised SWPPP, and all communications between the Settling Parties related thereto, as described in this Paragraph 29 shall be deemed confidential.  The Settling Parties shall not use such SWPPP or communications for any purpose other than as a confidential and informational communications, or as necessary as evidence in any dispute resolution proceeding.

### E.    COMPLIANCE MONITORING AND REPORTING

30.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. The Parties may agree to conduct the Site Inspection virtually. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours

in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.     <u>Reporting and Documents</u>. During the life of this Consent Decree, Forrest shall copy LA Waterkeeper on all non-privileged documents related to storm water quality at the Facility that Forrest submits to or receives from the Regional Board, the State Board, and/or any State or local agency or municipality, which are not uploaded to SMARTS.

32.     <u>Consent Decree Monitoring</u>. Forrest agrees to partially defray costs associated with Plaintiff's monitoring of Forrest's compliance with this Consent Decree during the Term by paying LA Waterkeeper the sum of Nine Thousand Dollars ($9,000.00).  Payment shall be made within thirty (30) days of approval by the bankruptcy court. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND
COSTS, MISSED DEADLINES, AND INTEREST**

33.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Santa Clara River Watershed, Forrest agrees to make a payment totaling Thirty Thousand Dollars ($30,000.00) to be made within thirty (30) days of approval by the bankruptcy court, payable to Santa Clara River Conservancy and sent via overnight mail to Santa Clara River Conservancy, P.O. Box 789 Santa Paula, CA  93061. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>LA Waterkeeper's Fees and Costs</u>. Forrest agrees to pay a total of Sixty-Five Thousand Dollars ($65,000.00) to LA Waterkeeper to reimburse LA Waterkeeper's investigation fees and costs, expert/consultant fees and costs, attorneys' fees, and other costs incurred by investigating and filing the lawsuit and negotiating a resolution of this matter within thirty (30) days of approval by the bankruptcy court. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to:

<u>Attn.</u>: Aqua Terra Aeris Law Group
8 Rio Vista Ave.
Oakland, CA 94611

Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.    <u>Missed Deadlines</u>. If Forrest fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Forrest shall pay a stipulated payment of Five Hundred Dollars ($500), provided, however, LA Waterkeeper shall notify Forrest of any such failure and Forrest shall have ten (10) days to cure the alleged violation in lieu of any stipulated payment or submit the matter to the Dispute Resolution procedures set forth in Section IV herein.

Such stipulated payments shall be made by check payable to: Santa Clara River Conservancy, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Santa Clara River Conservancy, P.O. Box 789 Santa Paula, CA  93061. Forrest agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.     Interest on Late Payments. Forrest shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Forrest's is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Santa Clara River Conservancy, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Santa Clara River Conservancy, P.O. Box 789 Santa Paula, CA  93061.

## IV.     DISPUTE RESOLUTION

37.     This Court shall retain jurisdiction over this matter for the Term for the purpose of enforcing its terms and conditions and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.     Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in

person) within ten (10) days of the date of the notice to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

39.   Settlement Conference. If the Settling Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 38, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

40.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.   Plaintiff's Waiver and Release of Forrest. Upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Forrest, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.   Forrest's Waiver and Release of Plaintiff. Upon the Effective Date of this Consent Decree, Forrest, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers, and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body (other than a proceeding instituted by Plaintiff) on any matter relating to Forrest's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

44.     <u>No Admission of Liability</u>. The Settling Parties entered this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Forrest maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46.     <u>Authority</u>. The undersigned representatives for Plaintiff and Forrest each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Settling Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

47.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

49. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50. <u>Severability</u>. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

52. <u>Diligence</u>. Forrest shall, in good faith, diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53. <u>Effect of Consent Decree</u>. As between the Settling Parties, compliance with this Consent Decree shall constitute substantial evidence that Forrest is complying with the provisions of the General Permit referenced herein.

54. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to

1  any deadline(s) set forth herein, must be made in writing at least fourteen (14) days

2  before the existing deadline(s) applicable to the provision(s) proposed to be modified.

3      56.    <u>Assignment</u>. Subject only to the express restrictions contained in this

4  Consent Decree, all the rights, duties and obligations contained in this Consent

5  Decree shall inure to the benefit of and be binding upon the Settling Parties, and their

6  successors and assigns, including the purchaser of the assets, FMI Holdco LLC,

7  pursuant to the asset purchase agreement dated February 25, 2025 ("the Stalking

8  Horse APA") under Chapter 11 of the United States Bankruptcy Code, provided

9  however that this provision shall not conflict, preempt or waive Forrest's rights to

10  terminate this agreement pursuant to paragraph 11.r.ii. Forrest shall notify Plaintiff

11  within ten (10) days of any assignment.

12      57.    <u>Force Majeure</u>. Neither of the Settling Parties shall be in default in the

13  performance of any of their respective obligations under this Consent Decree when

14  performance becomes impossible due to a Force Majeure event. A Force Majeure

15  event is any circumstance beyond a Settling Party's control, including without

16  limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public

17  health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

18  sabotage, or terrorism; restraint by court order or public authority or agency; or action

19  or non-action by, or inability to obtain the necessary authorizations or approvals from

20  any governmental agency or the bankruptcy court having jurisdiction over the Forrest

21  bankruptcy. A Force Majeure event shall not include normal inclement weather,

22  economic hardship, inability to pay, or employee negligence. Any party seeking to

23  rely upon this Paragraph to excuse or postpone performance shall have the burden of

24  establishing that it could not have been expected to avoid the Force Majeure event

25  and which by exercise of due diligence has been unable to overcome the failure of

26  performance. The Settling Parties shall exercise due diligence to resolve and remove

27  any Force Majeure event.

28

[PROPOSED] CONSENT DECREE

58.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Forrest</u>: |
|---|---|
| Los Angeles Waterkeeper<br>Erina Kwon<br>Benjamin Harris<br>Madeleine Siegel<br>360 E 2nd St., Suite 250<br>Los Angeles, CA 90012<br>Email: ben@lawaterkeeper.org<br>Email: madeleine@lawaterkeeper.org<br>Email: erina@lawaterkeeper.org<br>Phone: (310) 394-6162 | Eric Ellis<br>Chief Executive Officer<br>Forrest Machining LLC<br>27756 Avenue Mentry<br>Valencia, CA 91335<br>Email: eellis@fmiaerostructures.com<br>Phone: (661) 257-0231 |
| <u>With copies to</u>:<br>Anthony Barnes<br>Aqua Terra Aeris Law Group<br>8 Rio Vista Ave.<br>Oakland, CA 94661<br>amb@atalawgroup.com<br>(917) 371-8293 | <u>With copies to</u>:<br>Environmental Law Group LLP<br>Attn: S. Wayne Rosenbaum<br>225 Broadway, Suite 1900<br>San Diego, CA 92101<br>swr@envirolawyer.com<br>(619) 231 5858 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notice.

59.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Settling Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court,

1  as applicable. If the Settling Parties are unable to modify this Consent Decree in a
2  mutually acceptable manner that is also acceptable to the District Court, this Consent
3  Decree shall immediately be null and void as well as inadmissible as a settlement
4  communication under Federal Rule of Evidence 408 and California Evidence Code
5  section 1152.

6       The Settling Parties hereto enter this Consent Decree and submit it to the Court
7  for its approval and entry as a final judgment.

9       IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
10 as of the date first set forth below.

12 APPROVED AS TO CONTENT

14
15 Dated: _____April 3_____, 2025        By: _____
16                                            Bruce Reznik
17                                            Executive Director
                                             Los Angeles Waterkeeper

19
20 Dated: __3 APRIL__, 2025              By: _____
21                                            Eric Ellis
                                             President and CEO
22                                            Forrest Machining LLC

32
[PROPOSED] CONSENT DECREE

APPROVED AS TO FORM

AQUA TERRIS AERIS LAW GROUP

Dated: _____April 3_____, 2025        By: _____
                                               Anthony Barnes
                                               Attorney for Plaintiff
                                               Los Angeles Waterkeeper

ENVIRONMENTAL LAW GROUP LLP

Dated: __April 3_____, 2025        By: _____
                                          S. Wayne Rosenbaum
                                          Attorney for Defendant
                                          Forrest Machining LLC

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Forrest.

Dated: ___06/13/2025_____        CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE MARIA A. AUDERO
United States Magistrate Judge

33